Scott, J.
At common law, it has been long settled that the common carrier is responsible for the safe transportation and delivery of goods received by him for carriage, and can only justify or excuse a default, when occasioned by the act of God or the public enemies. He is not only responsible for his own acts of malfeasance, misfeasance, and negligence, in the course of his employment, but he is also regarded as an insurer against all loss or damage which may happen to goods, while in his charge, for the purposes of his employment, though occasioned by unavoidable accident, or by any casualty whatever, except only as above mentioned, And the burden of proof is thrown upon him, in bringing any particular case within the exceptions. For, ■ in the absence of proof, the loss itself raises the presumption of negligence on the part of the carrier.
This extent of liability and unfavorable presumption, to which the carrier is subjected by common law, is supposed to be justified by grave considerations of public policy, growing out of the char-acter of his employment. And we may safely say, that experience has amply vindicated the practical wisdom and propriety of the rule.
As to the power of the common carrier to restrict or limit this high degree of responsibility which is imposed upon him by the *56 common law, the authorities are by no means agreed, either as to the extent to which such limitation may be carried, or the mode in which it may be effected. The English decisions generally, as well as many in this country, recognize the right of the carrier to limit and qualify his liability by general notice, brought home to the knowledge of the owner of the goods, and not objected to by him. His acquiescence in such cases has been inferred from his-silence. But it has been forcibly urged, on *the other hand, that where a party is under obligation to carry upon the general terms of liability imposed by the law, it is more reasonable to infer, from the silence of the parties, that the carrier receded from terms which he had no right to impose, that than the customer waived what he had a legal right to demand. It has accordingly been uniformly held, in this state, that the common' carrier can not thus relieve himself from responsibility by his own act. Jones v. Voorhes, 10 Ohio, 145; Davidson v. Graham, 2 Ohio St. 131; Graham & Co. v. Davis & Co., 4 Ohio St. 362.
But that the liability of the carrier may be qualified and limited, by special contract, is well settled. It is true that even this right was denied, upon grounds of public policy, in New York, in the case of Cole v. Goodwin, 19 Wend. 251, and in the subsequent case of Gould v. Hill, 2 Hill, 623. But these have been since overruled. Parsons v. Monteath, 13 Barb. 353; Dorr v. N. J. Steam Nav. Co., 4 Sandf, 136; Stoddard v. The Long Island R. R. Co., 5 Sandf. 180. The authority of Gould v. Hill was also denied by the Supreme Court óf the United States, in the case of The N. J. Steam Nav. Co. v. Merchants’ Bank, 6 How. 344. That such restriction may be provided for by contract, has been affirmed in. this state, in the cases already referred to, in 2 and 4 Ohio St.
But to what extent this exemption from liability may be affected by the special contract of the parties, is a question of much importance, and upon which the authorities are less uniform.
Many of the English cases seem to recognize the right of a common carrier to stipulate for exemption from all liability, oven for gross neglect or positive misfeasance. Thus, in Maving v. Todd, 1 Starkie, 59, it was held, by Lord Ellenborough, that common carriers may make their own terms, and wholly exclude their responsibility ; to which he adds, “ I am sorry the law is so ; it leads to very great negligence.” And in Leeson v. Holt, 1 Starkie, 148, *where the carrier had given notice that articles of the par-. *57 ticular kind involved in that case, were to be entirely at the risk .of the owners, as to damage, breakage, etc., Lord Ellenborough, in summing up to the jury, said: “In the present ease the carriers seem to have excluded all responsibility whatever, so that, under the terms of the present notice, if a servant of the carriers had, in the most willful and wanton manner, destroyed the furniture intrusted to them, the principals would not have been liable. If the parties have so contracted, the plaintiff must abide by the agreement.” So in the much more recent case of Chippendale v. The Lancashire and Yorkshire Railway Co., 7 Eng. L. and Eq. 395, which, in its circumstances, closely resembles the case at bar. In that case the plaintiff had received from the railway company a ticket for cattle which were to be conveyed for him on the company’s road. This ticket was signed by the plaintiff, and contained at the bottom the following clause: “ N. B. This ticket is issued subject to the -owner undertaking all risks of conveyance whatever, as the company will not be liable for any injury or ■damage, howsoever caused, and occurring to live stock of any description, traveling upon the L. & Y. Railway, or in their vehicles.” The plaintiff saw the cattle put into the truck. Some of the cattle broke out of the truck on the journey and were injured ; and the jury having found, that the truck in question was so defectively constructed as to be unfit and unsafe for the purpose of conveying ■cattle along the line, assessed the plaintiff’s damages. 'The court nevertheless directed a verdict to be entered for the defendant, holding the company protected from liability by the'terms of the ticket. This judgment was affirmed by the court of Queen’s bench.
This decision, with several others to the same effect, was since the enactment of the common carrier’s act of 11 Geo. 4, and 1 Will. 4, chap. 68, by the 6th section of which all cases of special contract are excepted from its operation. These decisions, under that act, seem to establish, in England, *the right of the common carrier, by express contract, to exempt himself from liability for any thing short of actual malfeasance.
Biit in this country, whilst the right of a carrier is generally recognized to contract for exemption from that extraordinary responsibility imposed by the common law, which makes him an insurer, yet the validity of contracts providing for exemption from liability for his own misfeasance or gross negligence, has been frequently, if not generally, denied, upon grounds of public policy. In the *58 case of the N. Jersey Steam Nav. Co. v. Merchants’ Bank, 6 Howard, 344, it was held by the Supreme Court of the United States-, that a common carrier may, by contract, divest himself of that character, in respect to any particular transaction, so as to incur only the responsibility of an ordinary'bailee for hire, and be liable' for misconduct or negligence only. In Sager v. Portsmouth, S. & P. & E. Railroad Co., 31 Maine, 228, it was held that a common carrier is liable for the damages occasioned by his negligence or misconduct, notwithstanding a notice or contract to the contrary ; and also that the want of suitable vehicles, in which to transport articles, is negligence on the part of a carrier.
In some cases a distinction has been taken between the degrees of negligence, which, in the case of railroad transportation, is not always of easy application.
Mr. Story, in his Commentaries on the Law of Bailments, section 562 (6 ed.), on the authority of Chippendale v. L. & Y. Railway Co., 7 Eng. L. and Eq. 395, before referred to, says that “ proof of a special contract with the consignor, may exonerate a carrier from a loss through defective vehicles, if the terms of such contract be sufficiently broad.” But in this he is perhaps to be understood as speaking only of the English decisions, under the common carrier’s act. In treating of the effect of general notices, he says (sec. 571«) : “ At all events, such notices will not exempt the carrier from responsibility for losses occasioned *by a defect in the vehicle or machinery used for the transportation; for there is a breach of the implied warranty in such cases that the vehicle and machinery shall be in good order or condition and fit for the business or employment, and it will amount to negligence if they are not in such condition.”
And in Angell’s Law of Carriers, section 275, it is said that “the-utmost effect which can be given to a general notice, or special contract, although as broad and absolute in its terms as it can be, will not discharge a common carrier from liability for negligence, misfeasance, or want of ordinary care, either in the seaworthiness of the vessel, or her proper equipments and furniture ; nor is it allowed to exempt the carrier from accountability for losses occasioned by a defect in the vehicle, or mode of conveyance used in the transportation.”
As this whole subject, in its application to railroad transportation,, is comparatively a -new one, the want of harmony, which is apparent in the views of writers and the decisions of courts in the *59 different states, is by no means surprising. But this irreconcilable conflict has left us at liberty, in this state, to adopt such rules and follow such precedents as, in our judgment, are sanctioned by the-principles of justice and by considerations of public policy.
The agreed statement of facts, in this case, shows clearly that the-plaintiff’s loss was occasioned by the defective condition of the doors of the stock-cars, in which the cattle were conveyed. The doors-were imperfect and their fastenings broken, in consequence of which one of them dropped out, in running twelve miles, with ordinary and proper care, and six of the cattle escaped or were lost. Another door, thus defective, dropped out soon afterward, and six cattle more were lost. These defects, in the doors and their fastenings, were well known to both the parties when the cattle were loaded, and the plaintiffs expressly agreed to assume the risks arising therefrom. The petition avers, and the answer does not deny, that the-defendant *was a common carrier of live stock. Independent of the agreement of the parties, there can be no doubt that the defective and broken condition of the car-doors would constitute-gross negligence, on the part of the carrier, and fix the liability of the defendant. But, if the contract be valid, it is equally clear that the plaintiff’s have no legal ground of complaint. Hence the-question is directly made, upon the validity of this contract: Can a-common carrier thus exempt himself from liability for his own negligence? In the case of Davidson v. Graham, 2 Ohio St. 131, although this question was not directly presented, the contract in that case having no relation to the negligence of the carrier, yet tkewhole subject was quite fully considered by the court; and whilst that particular contract was held valid, because it only exempted the defendants from liability, for the dangers of the river, fire, and' unavoidable accidents, in respect to which the common-law rule made them insurers, yet the whole court concurred in saying that the-common carrier can not relieve himself to any extent, by special contract, from losses occasioned by his own neglect; and that, though he may by contract restrict his liability as an insurer against losses arising from mistake, or unavoidable accident, against which human prudence could not provide, yet that he can not stipulate for a less degree of care and diligence, in the discharge of his-duty, than that which pertains to his trust as a bailee for hire.
This subject was again reconsidered, in the case of Graham &. Co. v. Davis & Co., 4 Ohio St. 362, in which the question was more- *60 -■directly presented. The contract, in that case, exempted the defendants from -liability for losses arising from the dangers of the river navigation, fire, and unavoidable accident. The boat, in which the goods were carried, was sunk by striking a snag in the river; and it was held that the defendants could escape liability -only by proof that the accident could not, by care, have been prevented. The authorities were again reviewed in that *case, and the court again held, that “if the loss was occasioned by negligence, whether slight or gross, it was not within what was, or could have ■been made, by contract, an exception to the liability of the carrier.”
It is true, that in neither of these cases did the contract stipulate that the consignor should assume the risks of the carrier’s negligence ; but the extent of the carrier’s liabilities, his power to qualify or restrict them by contract, and the public policy which limits this power, were subjects which incidentally arose in both cases, and were evidently considered with care.
With the conclusions reached in these cases by our predecessors we are well satisfied, and think they should be affirmed upon this ■direct presentation of the question.
In this state, at least, railroad companies are rapidly becoming almost the exclusive carriers both of passengers and goods. In consequence of the public character and agency which they have voluntarily assumed, the most important powers and privileges have .been granted to them by the state. They have been permitted to exercise the right of eminent domain, in condemning and appropriating private property to the construction of great thoroughfares for general travel and transportation of the produce of the country. In the prosecution of this business, in which the whole community is so vitally interested, it is but reasonable that they should employ a degree of care and diligence proportioned to the magnitude of the interests with which they are intrusted and the peculiar perils likely to result from negligence, in a- mode of transportation necessarily dangerous. Morality and public policy alike refuse their sanction to contracts which tend to produce a reckless ■disregard of this high duty, byreleasing the party from all liability for the consequences of its gross violation. A public agent has no right to stipulate for impunity while wantonly endangering the lives or sacrificing the property of others.
The obligations of the defendant in this case were not created *61 ^wholly by special contract, and some of them, at least, could not be thus canceled or thrown off.
The facts in. this case, as shown by the agreed statement, strongly illustrate the impolicy of enforcing such special contracts. The plaintiffs were, in effect, compelled by circumstances, and as a choice of evils, to sign the contract upon which the defendant relies, and thus, at the moment of loading their cattle, to take upon themselves the risk of defective ears and broken and dilapidated doors, which the defendant, through its agent, had previously promised them to have repaired and make safe. The plaintiffs, relying upon this promise, had brought more than three hundred, bead of- cattle to the station at Bucyrus, ten miles from home. These cattle they were doubtless anxious to forward without delay to their place of destination. The defendant could, under the circumstances, and therefore did, impose upon them such conditions of risk as were alike inconsistent with the previous understanding-of the parties and with the duty resulting from the public employment in which the defendant was engaged.
If such a contract be valid, it would be equally so if it cast upon. the plaintiffs all the risks of negligence, however gross, in the management and running of the train, for the defendant was under no higher obligation to discharge this duty properly, than to provide ■ safe and suitable cars.
Indeed, we believe it has been sometimes claimed that a carrier • may, by contract, escape liability for the negligence of servants, though not for his own. This doctrine, when applied to a corporation which can only act through agents and servants, would secure complete immunity for the neglect of every duty.
"We have no hesitation in saying that the plaintiffs in this case-should have had judgment. The judgment of *the court of common pleas will therfore be reversed, and the cause remanded.
Brinkerhoee, C. J., and Sutlife, Peck, and G-holson, JJ., concurred.